# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GREGORY ROBINSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22CV28 |
| | ) | |
| MR. J. FRICK, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant Mr. J. Frick's Motion for Summary Judgment (Docket Entry 29) and an accompanying Motion to Seal (Docket Entry 32). Plaintiff Gregory Robinson, Jr. has not filed a response to Defendant's motions. Rather, during the time in which a response to Defendant's summary judgment motion was due, Plaintiff filed a motion entitled, "Plaintiff's Motion to Stay Summary Judgment Motion Filed by Defendant." (Docket Entry 34.) Defendant thereafter filed a response to Plaintiff's motion. (Docket Entry 35.) All matters are ripe for disposition. For the reasons stated below, the Court will recommend Defendant's motion for summary judgment be granted. The Court further finds the motion to stay summary judgment motion should be denied as moot and the motion to seal should be denied.

## I. PROCEDURAL HISTORY

On or about January 12, 2022, Plaintiff, a prisoner of the State of North Carolina, filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, in which he named Mr. J. Frick, a Piedmont

Prison Emergency Response Team ("PERT") commander, and Ms. Williams, the interim warden, as defendants. (*See* Compl., Docket Entry 2). In an order and recommendation, the Court recommended the action be dismissed without prejudice to allow Plaintiff to file a new complaint to correct noted deficiencies, including naming proper defendants with facts showing personal involvement by the defendants in the events alleged. (Docket Entry 3). Thereafter, Plaintiff filed an Amended Complaint naming Mr. Frick as the sole defendant and alleging violations in connection with a handcuffing incident. (*See* Am. Compl., Docket Entry 7.) Plaintiff contends Defendant violated his rights under the 4th and 8th Amendment to the Constitution with arguments sounding primarily in excessive force. (*Id.* at 3,6.)[1] He also makes a general reference to deliberate indifference. (*Id.* at 7.) Plaintiff alleges that as a result of being handcuffed behind his back for a period of three and a half hours he suffered injury to his left wrist and was subsequently diagnosed with carpal tunnel syndrome. (*Id.* at 5, 8.) Plaintiff's Amended Complaint does not allege Defendant cuffed him, but he claims Defendant ordered him to be handcuffed and denied a request to remove the handcuffs. (Id. at 5.) Plaintiff has sued Defendant in his official and individual capacity. (*Id.* at 3.) He seeks monetary damages as well as declaratory relief. (*Id.* at 5.)

On July 31, 2023, Defendant filed an answer to the Amended Complaint. (Docket Entry 14.) On August 24, 2023, a scheduling order was entered which set a discovery deadline for February 26, 2024. (Docket Entry 15.) Plaintiff subsequently filed a motion for joinder and reimbursement of funds, asking the Court to join the instant case with another case arising

---

[1] Unless otherwise noted, all citations in this memorandum opinion to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

2

from the same alleged incident, but involving different defendants. (Docket Entry 17.) On March 6, 2024, while the motion for joinder was still pending, Plaintiff filed a motion to suspend the discovery deadline and a motion to appoint counsel. (Docket Entries 19, 20.)[2] Defendant opposed the motion to suspend discovery noting the time for discovery had expired before Plaintiff filed the motion and Plaintiff was unable to show excusable neglect or another basis to extend the discovery period. (Docket Entry 25). On March 7, 2024, the undersigned entered a recommendation that Plaintiff's motion for joinder and reimbursement of funds be denied, which was later adopted by order of the Court. (Docket Entries 22, 36.)

On March 28, 2024, Defendant filed the instant motion for summary judgment along with a memorandum, declarations, and medical records in support. (Docket Entries 29, 30, 31.) Defendant also filed a motion to seal the medical records which is currently before the Court. (Docket Entry 32.) Although a letter was sent to Plaintiff on March 29, 2024, in accordance with *Roseboro v. Garrison*, 528 F. 2d 309 (4th Cir 1975), informing Plaintiff of the requirements for filing a response, (Docket Entry 33), he has not filed a response to the motion for summary judgment or a request for additional time to do so. The letter alerted Plaintiff, in part, that "failure to respond, or if appropriate, to file counter affidavits or evidence in rebuttal within the allowed time, may cause the court to conclude that the respondent's contentions are undisputed." (*Id.* at 1.)

On April 17, 2024, Plaintiff filed a motion to stay asking the Court to delay ruling on the motion for summary judgment until the court addressed his outstanding motions involving

---

[2] Plaintiff also sought a request for a ruling on his then-pending motion for joinder and reimbursement of funds. (*See* Docket Entry 21.)

discovery and joinder. (Docket Entry 34.) In an order entered on April 24, 2024, the Court denied the motion to suspend discovery deadline and the motion to appoint counsel. (Text Order dated 4/24/2024.) Even after Plaintiff's motion for appointment of counsel and motion to suspend discovery deadline were denied on April 24, 2024, and the order adopting the recommendation of this Court on the motion for joinder and reimbursement was entered on May 13, 2024, Plaintiff has failed to file a response to Defendant's motion for summary judgment. Nor has Plaintiff otherwise sought an extension to file any response. Defendant's motion for summary judgment is now ripe for ruling.

## II. BACKGROUND

The claims in the Amended Complaint arise out of incidents that occurred at Piedmont Correctional Institution on or about October 1, 2019, when the PERT team was conducting a search of the canteen area. (*See generally* Am. Compl.) According to Plaintiff's allegations, Plaintiff was handcuffed by Officer Honbarrier based on an order given by Defendant. (*Id.* at 5.) Officer Honbarrier escorted Plaintiff to a holding cell and placed him in the cell "with handcuffs tightly on" with four "canteen men" also in handcuffs. (*Id.*) Officer Honbarrier left the area, and Plaintiff and the other inmates were watched by Officer Shuler. (*Id.* at 5-6.)

Plaintiff alleges he and the other inmates repeatedly asked Officer Shuler to remove the handcuffs "being that Plaintiff was behind closed and look [*sic*] doors and the discomfort of being handcuffed behind the back became painful because the handcuffs appeared tight and as the minutes kept passing it felt like the handcuffs was becoming tighter." (*Id.* at 6.) Plaintiff said Officer Shuler stated the decision to remove the handcuffs was not his because it was a PERT operation. (*Id.*) Plaintiff alleges a "call was made to Officer Frick the

4

Defendant, who said leave Plaintiff in handcuffs." (*Id.*) Plaintiff contends he made multiple requests to have the handcuffs removed. (*Id.* at 7.) He said he was kept in tight handcuffs behind his back for the three and a half hours he and the other inmates were held in the holding cell. (*Id.*) He alleges the tightness of the cuffs was not necessary to maintain order and "[c]learly this was an act that looks like it was done maliciously and sadistically to cause harm." (*Id.* at 6.)

Plaintiff alleges after several hours he was escorted back to the canteen area where Defendant Frick, another officer, and Ms. Covery, the canteen supervisor, were present. (*Id.* at 7.) As Defendant Frick and the other officer searched the canteen, Plaintiff says he asked Defendant Frick to remove the handcuffs. (*Id.*) He says, "[i]t was at this moment when Officer Frick removed the handcuffs while I stood no more than four steps in the canteen door behind the Defendant while Defendant continued to search the canteen clearly indicating that Plaintiff was no threat to anyone." (*Id.*) Plaintiff alleges the treatment was cruel and unusual and involved deliberate indifference. (*Id.*)

Plaintiff alleges that because of the tight handcuffs he "sustained a lifelong injury that brings about pain throughout Plaintiff's left forearm and wrist daily." (*Id.* at 5.) He says he reported the injury, and he was seen by the inside medical team for swelling and numbness in his hand and wrist. (*Id.*) Plaintiff states that when he was seen by an outside doctor, he was diagnosed with carpal tunnel syndrome. (*Id.* at 8.)

Based upon a thorough review of the Complaint, the Court concludes Plaintiff alleges a claim of excessive force against Defendant because Plaintiff was handcuffed too tightly. (*Id.*

at 6, 7, 9.)  Plaintiff also makes a reference to deliberate indifference which the Court construes as a claim alleging deliberate indifference to conditions of confinement.  (*Id.* at 7.)

In support of his motion for summary judgment, Defendant argues that Plaintiff is unable to show Defendant violated any of Plaintiff's constitutional rights.  In support of the motion Defendant attaches a declaration on his own behalf stating that on October 1, 2019, he was a correctional officer who was conducting a search of the canteen areas at Piedmont Correctional Institution. (Declaration of John Frick ¶¶ 2-3, Docket Entry 30-2.)  He says while the search was carried out the inmates working in the canteen were handcuffed and placed in a holding cell.  (*Id.* ¶ 3.)  He says that was done based on a decision of the warden. (*Id.*)  He says he was not the officer who handcuffed Plaintiff, and he was never made aware during the search of any issues with the inmates, or told the inmates wanted to be removed from restraints.  (*Id.*)

In addition to Defendant's declaration, Defendant has provided the declaration of Officer Honbarrier.   (Declaration of Justin Honbarrier, Docket Entry 30-3.)  Officer Honbarrier indicates he was the correctional officer who handcuffed Plaintiff at the time of the search.  (*Id.* ¶ 3.)  He indicates it is common practice to restrain inmates with handcuffs while a search of an inmate's area is being conducted.  (*Id.*)  He says he handcuffed Plaintiff, made sure the handcuffs "were not too tight" and took Plaintiff to the holding cell where the other canteen workers were also held.  (*Id.*)  He then returned to the canteen area to assist in the search.  (*Id.*)  He says during the search he was never notified of any problems with the inmates or told the inmates wanted their handcuffs removed while in the holding cell.  (*Id.*) Both Defendant and Officer Honbarrier declare that after the search was concluded "the

inmates were released from the holding cell and normal operations resumed." (Frick Decl. ¶ 3; Honbarrier Decl. ¶ 3.)

Defendant has provided a copy of an incident report related to the search of the canteen which contains a statement from Officer Shuler. Officer Shuler indicated that while he was watching the inmates, Plaintiff asked for the door to the holding cell to be open to allow some air, and Officer Shuler complied. (Docket Entry 30-1 at 7.) Officer Shuler said Plaintiff never asked him to remove his handcuffs. (*Id.*) Defendant has also included some of Plaintiff's medical records. (Docket Entry 31.) The records reflect that upon awaking the day after the search, Plaintiff complained of tingling and throbbing in his wrist to his fingertips which he attributed to being handcuffed behind the back the day before. (*Id.* at 2.) The records indicate that the provider noticed "a small slight red area on both wrist [sic], non tender to touch," and his hand grip in both hands was "equal and strong." (*Id.*) A report from approximately six weeks later indicates Plaintiff had received a diagnosis of left carpal tunnel syndrome. (*Id.* at 3.)

## III. DISCUSSION

### A. Plaintiff's Motion to Stay

The Court first turns to Plaintiff's motion entitled, "Plaintiff's Motion to Stay Summary Judgment Motion Filed by Defendant." (Docket Entry 34.) Plaintiff asks the Court to "grant stay of summary judgment motion filed by Defendant until all other motions are resolved before this Honorable Court." (*Id.* at 2.) In support, Plaintiff argues he has multiple outstanding motions that "are critical to the proceedings in this case." (*Id.* at 1.) He notes issues raised in motions relating to discovery and his attempt to join this case with another

case. (*Id.*) Defendant has opposed the motion arguing the motions that Plaintiff claimed needed to be resolved before summary judgment can proceed have been ruled upon. (Docket Entry 35).

Plaintiff's motion to stay was filed on April 17, 2024, while Plaintiff's motion to suspend discovery deadline (Docket Entry 19) and motion to appoint counsel (Docket Entry 20) were still pending before the Court. Also during that time, a final order as to the undersigned's recommended ruling on Plaintiff's motion for joinder and reimbursement of funds had not yet been entered, which Plaintiff had filed objections. (*See* Docket Entries 22, 27).

At this time, all the outstanding matters upon which Plaintiff based his request for a stay of Defendant's summary judgment motion have been ruled on by the Court. Plaintiff's motion to suspend discovery and motion to appoint counsel were denied by the Court in an order entered on April 24, 2024 (*see* Text Order dated 4/24/2024), and an order was entered on May 13, 2024, adopting the recommendation of the undersigned with respect to the motion for joinder. (Docket Entry 36.) The order denied the motion for joinder and denied as moot the motion for reimbursement of funds. (*Id.*) Consequently, as the grounds upon which Plaintiff requested the stay have been resolved, Plaintiff's motion will be denied as moot.

## B. Defendant's Motion for Summary Judgment

The Court next turns to Defendant's Motion for Summary Judgment. Summary judgment is appropriate when there exists no genuine issue of material fact and the moving part is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears

8

the initial burden of coming forward and demonstrating the absence of genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must affirmatively demonstrate there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

Defendant moves for summary judgment on several grounds. First, Defendant contends that sovereign immunity bars Plaintiff's official capacity claims. (Docket Entry 30 at 5-6.) Second, Defendant contends that he lacked any personal involvement in any alleged violation of Plaintiff's constitutional rights. (*Id.* at 7.) Next, Defendant argues that there was

9

no violation of Plaintiff's Fourth or Eighth Amendment rights. (*Id.* at 8-21.) Last, Defendant asserts that he is entitled to qualified immunity. (*Id.* at 21-22.) The undersigned will address the arguments below.[3]

## Sovereign Immunity

The Court first considers Defendant's argument the claims against him in his official capacity are barred by sovereign immunity. (*Id.* at 5-6.) The Eleventh Amendment prohibits actions in federal court against a state unless the state has consented to suit or unless Congress has lawfully abrogated the states' Eleventh Amendment immunity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). It follows that just as "the Eleventh Amendment bars a damages action against a state in federal court," it also bars suit against state officials in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Here, Defendant Frick is an employee of the State of North Carolina and immunity has not been waived. Therefore, the claims against him in his official capacity seeking damages are barred and should be dismissed.

---

[3] Plaintiff failed to file a response to Defendant's summary judgment motion. Per the local rules, a motion such as this should "be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." L.R. Civ. P. 7.3(k). However, "in considering a motion for summary judgment, [the Court] '*must* review the motion, even if unopposed, and determine from what it has before it whether the moving part is entitled to summary judgment as a matter of law.'" *Robinson v. Wix Filtration Corp.,* 599 F.3d 403, 409 n.8 (4th Cir. 2010) (quoting *Custer v. Pan Am Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (emphasis in original).

## Personal Involvement

Defendant next argues the claims should be dismissed because he lacked personal involvement in the situation leading to the alleged injury. (Docket Entry 30 at 7.) "To establish individual liability under § 1983, a plaintiff must affirmatively show the 'official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Hill*, No. 1:03-CV-109, 2004 WL 1618591, at *4 (M.D.N.C. July 16, 2004) (citing *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)).

Defendant did not personally participate in the conduct giving rise to the alleged injury. Defendant correctly states it is undisputed he did not apply the handcuffs to Plaintiff, did not take him to the holding cell, and did not watch him while he was in the holding cell. Plaintiff alleges Defendant was involved because he ordered the cuffs to be placed on Plaintiff. He also alleges when he asked Officer Shuler to remove the handcuffs Officer Shuler said he could not because Defendant said no. However, these unsupported allegations are contradicted by the only evidence before the court. In the incident report for the search, Officer Shuler stated Plaintiff "never asked me to remove his handcuffs." (Docket Entry 30-1 at 7.) He indicates the only request Plaintiff made was for him to open the door for air, and Officer Shuler complied. (*Id.*) In addition, Defendant Frick states in his declaration that the decision to restrain the inmates with handcuffs and place them in a holding cell during the search was "made by the warden at Piedmont CI." (Frick Decl. ¶ 3.) He also states he was never notified during the search of any problems with the inmates or that any inmate wanted to have the restraints removed while in the holding area. (*Id.*) Plaintiff did not verify his Amended Complaint, failed to respond to the motion for summary judgment, and has not

11

otherwise presented evidence to support his claims or counter Defendant's arguments or evidence. "At this stage, Plaintiff cannot rely solely upon his allegations . . . to survive summary judgment." *Fordham v. Keller*, No. 1:13-CV-617, 2017 WL 1091876, at *7 (M.D.N.C. Mar. 22, 2017); *Edwards v. Norfolk S. Corp.*, 872 F. Supp. 277, 280 (W.D. Va.) ("In order to resist a motion for summary judgment, the plaintiff cannot rest on the allegations in his complaint, but must counter the evidence produced by the defendants."), *aff'd*, 42 F.3d 1385 (4th Cir. 1994). Therefore, there is no genuine issue of material fact showing Defendant had personal involvement in the alleged violation of Plaintiff's rights.

Nor can Plaintiff succeed insofar as he may be alleging Defendant is liable based on his supervisory role. A theory of *respondeat superior* is generally inapplicable to § 1983 suits. *See Mondell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir. 1994). A supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
> (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and
> (3) there was an "affirmative causal link" between the supervisor's inaction and the constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The Fourth Circuit has held that

> [o]rdinarily, [a plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the

12

> misconduct. A supervisor's continued inaction in the face of
> documented widespread abuses, however, provides an
> independent basis for finding he either was deliberately
> indifferent or acquiesced in the constitutionally
> offensive conduct of his subordinates.

*Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (internal citation omitted). As noted above, Defendant has submitted declarations showing he did not ever receive information there was an issue with Plaintiff during the time of the search or that Plaintiff requested his handcuffs be removed. There is no indication Defendant had actual or constructive knowledge of any alleged harm. Nor is there any allegation or evidence of occurrences beyond this single isolated incident. Therefore, there is no genuine issue of material fact with respect to Defendant's liability based on his supervisory role. Summary judgment should thus be granted in favor of Defendant as he lacked personal involvement or knowledge of a risk that would give rise to supervisory liability.

### Eighth Amendment Claims

Defendant also argues the motion for summary judgment should be granted because Plaintiff is unable to establish his Eighth Amendment rights were violated under either an excessive force or a conditions of confinement claim.

### 1. Excessive Force

Plaintiff asserts that excessive force was used against him because the handcuffs were too tight and unnecessary because the inmates were in a closed holding cell. The Eighth Amendment protects prisoners from "unnecessary and wanton infliction of pain." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotation omitted). Prison

13

officials have an "an affirmative "obligation to take reasonable measures to guarantee [inmate's] safety." *Id.* (internal quotations omitted).

When evaluating an excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To make this determination, the Court considers two elements: "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered, or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). The Supreme Court has set forth a list of non-exclusive factors to assist courts in determining whether an officer has acted with a culpable state of mind: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko*, 530 U.S. at 239 (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986).) (internal quotations omitted).

The record establishes Plaintiff was placed in handcuffs while in a holding cell with other inmates during the search of the canteen area. According to Officer Honbarrier "it is common practice that while the PERT Team is conducting a search of any inmate's area (cell or work area), that the inmate be restrained with handcuffs while the search is completed." (Honbarrier Decl. ¶ 3.) Officer Honbarrier also states he "ensured the handcuffs were not too tight." (*Id.*) Both Defendant and Officer Honbarrier state that "after the search of the

14

canteens was completed, the inmates were released from the holding cell and normal operations resumed." (Frick Decl. ¶ 3; Honbarrier Decl. ¶ 3.)

As discussed above, the record establishes Defendant did not personally handcuff Plaintiff or otherwise use any type of force against him. The only evidence in the record indicates the handcuffs were applied in keeping with routine practices of the PERT Team, and the use of restraints was reasonable where four inmates were together in a holding area. Plaintiff and the other inmates were only cuffed for the period of the search, and there is no evidence the cuffs were place with an intention to cause harm. Plaintiff even states that when he was no longer in the holding cell and he directly asked Defendant to remove his cuffs, Defendant did so right away. (Am. Compl. at 7.) Officer Honbarrier's declaration and Officer Shuler's statement in the incident report supports Defendant's declaration that he was never alerted to any problem or concerns from the inmates during the time of the search. Therefore, no reasonable jury could find with respect to Defendant that any actions he took were done "maliciously or sadistically to cause harm." *Hudson*, 503 U.S. at 7. Plaintiff cannot establish the necessary subjective component of the Eighth Amendment excessive force analysis, and having so found, Defendant is entitled to summary judgment on the excessive force claim. *See, e.g.*, *Tyler v. Poole*, No. 1:17-CV-1142, 2020 WL 758116, at *5 (M.D.N.C. Feb. 14, 2020), *adopted by* 2020 WL 1527923 (M.D.N.C. Mar. 31, 2020).

### 2. Conditions of Confinement

Although Plaintiff's Amended Complaint focuses primarily on his allegations of excessive force, Plaintiff also states that Defendant was responsible for "cruel and unusual punishment and deliberate indifference." (*Id.* at 7.) Insofar as Plaintiff may be attempting to

15

claim he was subject to deliberate indifference in how he was confined during the search he is also unable to show a genuine issue of material fact exists to survive summary judgment.

"The Eighth Amendment, which prohibits, 'cruel and unusual punishments,' applies to claims by prisoners against correction officials challenging conditions of confinement." *Porter v. Clarke*, 923 F.3d 348, 355 (2019) (citations omitted). Eighth Amendment condition-of-confinement claims are evaluated using a two-part test that has an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A successful Eighth Amendment claim contains two elements: the deprivation must be, objectively, "sufficiently serious," and the prison official must have demonstrated a "deliberate indifference to inmate health or safety." *Id.* at 834. The deprivation must result in "extreme" deprivation. *See Scinto v. Stansberry*, 841 F.3d 219, 234 (4th Cir. 2016) ("Only an 'extreme deprivation' is actionable under the Eighth Amendment."). A prison official is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Defendant argues Plaintiff fails to present an issue of material fact with respect to the conditions of confinement. (Docket Entry 30 at 15.) He argues that Plaintiff is unable to show Defendant acted with deliberate indifference or that Plaintiff suffered a serious deprivation. (*Id.* at 15-19.)

The undisputed information before the Court is that Plaintiff and the other inmates were placed in handcuffs and held together in a holding cell for a period of three and half hours while the canteen was searched. As soon as the search was completed the men were released. Plaintiff concedes he was only cuffed during the duration of the search. Therefore,

16

even based on Plaintiff's unsupported allegations there is no evidence of an excessive risk of serious harm or serious deprivation. Moreover, the only evidence before the Court shows Plaintiff never complained or made any officer aware he thought the handcuffs were too tight or uncomfortable. Defendant did not apply the handcuffs and there is no evidence in the record to support he was ever told or otherwise aware of an issue affecting Plaintiff's health and failed to properly respond. Further, as noted above, Plaintiff states that when he personally asked Defendant to remove the handcuffs, Defendant did so.[4] Therefore, Plaintiff cannot succeed in showing Defendant acted with deliberate indifference to a serious risk to Plaintiff's health during the time he was confined during the search. Consequently, Defendant should be granted summary judgment as to any Eighth Amendment claim challenging the condition of confinement.

## D. Fourth Amendment Claim

In his Amended Complaint, Plaintiff in conclusory fashion refers to the Fourth Amendment as a basis for his claims. (Docket Entry 7 at 3.) In the Motion for Summary Judgment, Defendant asserts that he did not violate Plaintiff's Fourth Amendment. As Defendant contends, Plaintiff, who only makes a broad reference to the Fourth Amendment, does not make it clear how he believes his rights under the Fourth Amendment were violated.[5] (Docket Entry 30 at 8.)

---

[4] There is no indication Defendant was asked to remove the handcuffs for any particular reason. Plaintiff merely alleges he asked Defendant to remove the handcuffs and Defendant Frick removed them. (Docket Entry 7 at 7.)

[5] *Pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this liberal

The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. Const. amend IV. "Given the realities of institutional confinement," a detainee's reasonable expectation of privacy would necessarily be "of diminished scope." *Bell v. Wolfish*, 441 U.S. 520, 557 (1979). It is well established with respect to searches of prison cells that "prisoners have no legitimate expectation of privacy and the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Accordingly, there is no genuine issue of material fact that the search of the canteen area of the prison would not violate Plaintiff's Fourth Amendment rights. Defendant's motion for summary judgment should be granted with respect to any claims based on the Fourth Amendment.

### E. Qualified Immunity

Defendant also asserts he has qualified immunity to shield him from any claims. (Docket Entry 30 at 21-22.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]" (emphasis added)). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the

---

construction, "generosity is not fantasy," and the Court is not expected to plea a plaintiff's claims for him. *Pender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010) (citation omitted). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009). Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

As discussed above, Plaintiff is unable to demonstrate a violation of his constitutional rights by Defendant. Therefore, the undersigned concludes Defendant Frick is entitled to qualified immunity as to Plaintiff's claims against him. *See Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there"); *Parker v. Burris,* 2015 WL 1474909, at *8 (M.D.N.C. Mar. 31, 2015) (finding that "the absence of evidence supporting a finding that a constitutional violation occurred satisfies the first prong of the qualified immunity analysis"), *report and recommendation adopted*, No. 1:13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015), *aff'd*, 623 F. App'x 82 (4th Cir. 2015).

## V. MOTION TO SEAL

Lastly, the Court turns to Defendant's motion to seal. (Docket Entry 32). In the motion, Defendant asks the Court to issue an order to seal Defendant's Exhibit D, copies of Plaintiff's North Carolina Department of Public Safety medical records relevant to the case. The records are currently filed under seal. (Docket Entry 31).

19

Because Plaintiff's medical records were submitted in connection with the Motion for Summary Judgment pending before the court, the documents are a judicial record, and the right of access is protected under the First Amendment. *Doe v. Pub. Citizen*, 749 F.3d 246, 267-68 (4th Cir. 2014). Thus, the granting of such motion is proper only when a compelling government interest is shown, and the sealing of the documents is narrowly tailored to meet the compelling interest. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). In considering the issue, the court must

> [W]eigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

*Va. Dept. of State Police v. Wash. Post,* 386 F.3d 567, 576 (4th Cir. 2004). A motion to seal cannot rest on conclusory allegations but must "present specific reasons in support of its position." *Id.* at 575.

The motion to seal was filed in the docket on March 28, 2024, and therefore, there has been a reasonable opportunity for interested parties to address the matter. Plaintiff has not responded to, or joined in, the motion. Defendant asserts the documents should be sealed because they are medical records "deemed confidential under applicable law." (Docket Entry 32 at 1.) This statement is the entirety of the explanation presented by Defendant to support sealing the records. The Court recognizes there is a government interest in protecting medical information. *See Fulp v. Columbiana Hi Tech, LLC*, No. 1:16-CV-1169, 2018 WL 1027159, at *10 (M.D.N.C. Feb. 21, 2018). However, there is no blanket exception to the First

20

Amendment right to access for medical records, and there are times unsealing medical records is appropriate. *See, e.g., Musgrove v. Moore*, No. 1:19-CV-164, 2022 WL 19977408, at *2 (M.D.N.C. Apr. 20, 2022). The submitted medical records are limited to three pages of information, all relevant to the injuries alleged in the Amended Complaint. (*See* Docket Entry 7 at 5, 8.) Moreover, the records provide minimal information beyond that already shared by Plaintiff in the Amended Complaint and Defendant in support of his Motion for Summary Judgment. (*See* Docket Entry 7 at 5, 8; Docket Entry 30 at 4.) Therefore, any privacy concerns are diminished. Consequently, the undersigned cannot find the need to seal the medical records has been shown to be compelling, and Defendant's motion to seal will be denied.

## VI. CONCLUSION

For the reasons state herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket Entry 29) be **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay Summary Judgment Motion (Docket Entry 34) is **DENIED AS MOOT**, and Defendant's Motion to Seal (Docket Entry 32) is **DENIED**. The Court directs the Clerk to unseal the records filed at Docket Entry 31.

/s/  Joe L. Webster
United States Magistrate Judge

September 3, 2024
Durham, North Carolina

Case 1:22-cv-00028-WO-JLW   Document 37   Filed 09/03/24   Page 21 of 21